United States District Court
Southern District of Texas
**ENTERED**
August 04, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT            SOUTHERN DISTRICT OF TEXAS

Stress Engineering Services, Inc., §
    Plaintiff, §
                                     §
v.                                 §     Civil Action H-21-3210
                                     §
Brian Olson and Becht Engineering §
Co., Inc., §
    Defendants. §

# Report and Recommendation

Stress Engineering Services, Inc., (SES) sued its former employee, Brian Olson, and the competitor who hired him, Becht Engineering Co., Inc., (Becht), alleging violations of the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831–1839. ECF No. 1 at 12–15. SES also alleged Texas common law breach of contract against Olson, tortious interference with contract against Becht, breach of fiduciary duty against Olson, knowing participation in a breach of fiduciary duty against Becht, and civil conspiracy against Olson and Becht. *Id.* at 15–20.

Olson and SES moved to dismiss the complaint or to abstain from hearing the case. ECF Nos. 8, 9. The court recommends that the motions to abstain be denied, that Olson's motion to dismiss be denied, and that Becht's motion to dismiss be granted in part and denied in part.

### 1. Allegations

SES is an engineering firm that provides services to clients who "operate refinery, petrochemical, and other chemical facilities whose equipment is subject to 'high temperature hydrogen attack [HTHA].'" ECF No. 1 at 5. HTHA is a chemical process whereby carbon- and low-alloy steel deteriorates when exposed to hydrogen at temperatures above 400 degrees Fahrenheit. *Id.* That deterioration can cause catastrophic equipment failure. *Id.* Thus "[c]lients pay good money

for engineering services to detect HTHA in their equipment, and SES and Becht compete for those clients using competing HTHA 'models.'" *Id.*

Olson began working for SES on June 4, 2012, as an analyst and was promoted to the role of "Staff Consultant" in January 2020. ECF No. 1 at 4. When he started work at SES, Olson signed an agreement that required him to keep confidential "any information pertaining to the consulting services rendered for [SES]'s clients" which was designated confidential or would "reasonably be expected" to be confidential. *Id.* at 4 (citing Paragraph I of the agreement). Separately, the agreement also imposed responsibilities on Olson to return to SES "any and all drawings, written information, or software source codes, etc." that are the property of, controlled by, or in the custody of SES. *Id.* (citing Paragraph V of the agreement).

During Olson's employment with SES, he worked on research and development projects related to HTHA. ECF No. 1 at 5. He thus had regular access to testing data, testing methods, models, assessments of client projects, proprietary software, formulas, methodologies, and pricing information. *Id.* Olson contributed to the development and implementation of "unique, specialized testing methods and software that SES created and now uses to perform HTHA-related services for its clients." *Id.* SES identified the trade secrets to which Olson had access as the "Four-Point Bend Methods," the "Waller Test Results," and "Scientific Know-How." *Id.* at 6.

Olson and Becht began their relationship "no later than April 9, 2019," which was eighteen months before he terminated his employment with SES. ECF No. 1 at 7. By that date, Becht had given Olson an offer of employment, but it does not appear he accepted it. *Id.* Instead, Olson stayed at SES and continued to have access to SES's research and development efforts and testing facilities. *Id.* SES alleges that it was Olson's plan to fully develop his own HTHA model and join Becht only after his model was accepted by the American Petroleum Institute's standard setting body. *Id.*

In July 2019, Olson sent a series of email messages to David Dewees at Becht that disclosed SES's "Scientific Know-How." ECF No. 1 at 7. After these disclosures, Dewees sent Olson an updated offer letter with a new validity date and a "clarification on discretionary bonus possibilities." *Id.* On November 13, 2019, Olson accepted in writing another offer of employment and said he was looking forward to joining the team at Becht. *Id.* at 8. Olson did not immediately join Becht, however. *Id.* Instead, he continued working at SES so he could use their testing facilities to develop his own HTHA model. *Id.* An email sent among Becht engineers and copied to Becht's president of engineering expressed excitement about the prospect of using Olson's knowledge and experience to help Becht develop new HTHA approaches. *Id.*

From March 31, 2020, to April 28, 2020, while still working at SES, Olson continued to disclose SES's Scientific Know-How. ECF No. 1 at 8. In a communication with someone at Becht, Olson expressed his frustration with SES and stated that he "held on," apparently meaning that he stayed at SES, for joint industry project experiments. *Id.* SES alleges that Dewees told a colleague that Olson was trying to get public credit for testing results, of which he was proud. *Id.* at 7-8. SES explains that the experiments and testing referred to encompassed SES's trade secrets. *Id.* at 9.

In July 2020, Becht presented Olson an updated offer of employment that included a signing bonus. ECF No. 1 at 9. Olson and Dewees continued their discussions about HTHA modeling including the disclosure of confidential information. *Id.* In October 2020, Olson also began suggesting to SES's customers that they work with Becht. *Id.* According to SES, the assistance, advice, and information Olson gave to Becht while he was still employed at SES substantially assisted Becht in its development of its own HTHA modeling. *Id.*

Olson resigned from SES on October 24, 2020. ECF No. 1 at 3. He retained "nearly 30 boxes of SES property," a hard drive, and electronic files on his laptop. *Id.* at 10. These contained voluminous technical, business, and financial information, including confidential

3

information and physical samples belonging to SES. *Id.* SES performed a forensic electronic review that revealed Olson accessed SES's computer systems in his final days of employment and viewed versions of SES's modeling software that show SES's trade secret modeling equations, confidential reports including for projects on which Olson did no work, "files pertaining to SES's coke drum work," and client information. *Id.* at 11. SES recovered some of their property, but some of it has never been returned. *Id.*

Since Olson joined Becht, former SES clients have hired Becht for HTHA projects. ECF No. 1 at 11. Becht's HTHA work now competes directly with SES. *Id.*

### 2. Analysis

SES asserts six causes of action in its complaint. Defendants move to dismiss the complaint in its entirety based on jurisdiction and abstention. Defendants also move to dismiss certain claims for failure to state a claim upon which relief may be granted.

### A. Motion to Dismiss under 12(b)(1)

Both defendants argue that this court lacks subject matter jurisdiction because SES's federal claims are "immaterial and made solely for the purpose of obtaining jurisdiction" and because SES's claims are "wholly insubstantial and frivolous." Defendants argue that SES's non-suit of its nearly identical claims in state court should be taken as an admission that the instant claims are utterly without merit. The cases Defendants cite rely on *Bell v. Hood*, 327 U.S. 678 (1946), which does not support the argument raised. In fact, jurisdiction "is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* at 682. In another case cited by Olson, the Fifth Circuit explained that a court's conclusion that a claim lacks merit does not mean that the court does not have jurisdiction to decide those merits. *Jefferson Cmty. Health Care Ctr., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 622 (5th Cir. 2017).

4

Here, the federal trade secret causes of action are a central part of this case. Defendants have cited no law for the proposition that the court should consider Plaintiff's non-suit of similar state law causes of action to be an admission that the claims utterly lack merit. As will be discussed below, the DTSA claims will not be dismissed at this juncture. The court has subject matter jurisdiction.

*B. Abstention*

Defendants argue that the court should abstain from hearing SES's claims based on the *Colorado River*[1] abstention doctrine. The *Colorado River* doctrine applies only in "exceptional circumstances." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 851 (5th Cir. 2009). For the doctrine to apply there must be "pending parallel proceedings in federal and state court involving the same parties and issues." *Id.* (citing *RepublicBank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir.1987)). Once pending parallel proceedings have been identified, there are six factors for the court to weigh. *Id.* The court must make a "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16 (1983)). "*Only the clearest of justifications will warrant dismissal.*" *Id.* (quotation omitted) (emphasis in original).

Plaintiff has represented to the court that the state court action has been finally dismissed without prejudice to refiling. ECF No. 13 at 2. Defendants have not rebutted Plaintiff's representation. It thus appears that there is no parallel state court proceeding and no reason for this court to abstain.

*C. Motion to Dismiss under 12(b)(6)*

Olson and Becht both move to dismiss various SES claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

---

[1] 424 U.S. 800 (1976).

claim upon which relief may be granted. When the parties have filed separate motions on the same claim, they are analyzed together.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "is not meant to resolve disputed facts or test the merits of a lawsuit." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

To survive a motion to dismiss, the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.* The pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim to be asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Allen*, 907 F.3d at 177 (quoting *Twombly*, 550 U.S. at 555).

### i. *DTSA Claims Against Olson and Becht*

SES asserts claims under 18 U.S.C. § 1836(b)(1) against Olson and Becht for misappropriation of SES's HTHA-related trade secrets. ECF No. 1 at 12–15. Olson and Becht both argue in their motions to dismiss that SES has failed to identify any trade secret, that SES failed to allege any act of misappropriation, and that there is no showing that the alleged trade secrets were used in interstate commerce. ECF No. 8 at 10–12, ECF No. 9 at 12–15. The court concludes that SES has sufficiently pleaded a DTSA cause of action.

To state a claim under DTSA, a plaintiff must allege facts showing: (1) a trade secret; (2) misappropriation; and (3) that "the trade secret is related to a product or service used in, *or intended* for use in, interstate or foreign commerce." 18 U.S.C. § 1836 (b)(1) (emphasis added). DTSA's definition of "misappropriation" includes acquisition of trade secrets with the knowledge that they were acquired by improper means. *See* 18 U.S.C. § 1839(5)(A). "Misappropriation" also means disclosure or use of trade secrets without consent by a person who knew or had reason to know that the trade secret was acquired under circumstances giving rise to a duty to maintain secrecy of the trade secret. *See id.* at § 1839(5)(B)(ii)(II). The definition of "improper means" includes theft and "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A).

"Trade secret" is defined by DTSA to mean:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if. . . the owner of the trade secret has taken reasonable measures to keep the information secret[] and . . . the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

As discussed above, the federal pleading standard only requires the court to assess the plausibility of SES's trade secret claims, accepting all well-pleaded facts as true and viewing the allegations in its favor. The amended complaint contains more than threadbare recitals of the elements of its DTSA claims.

SES describes its trade secrets to include the "Four-Point Bend Methods," the "Waller Test Results," and the "Scientific Know-How." ECF No. 1 at 6, 12. SES identified the trade secrets through a general description of their content, their use, and how they were developed. *Id.* While the complaint does not include all the confidential information and data about the trade secrets that might be available, it does sufficiently place defendants on notice of the sorts of trade secret information it believes were misappropriated. That is sufficient at this point. SES will fully disclose the details of its trade secrets during discovery. The complaint also states generally that it takes measures to maintain confidentiality and explains that Olson and others were under a contractual obligation to maintain confidentiality. *Id.* at 4, 12. This is sufficient at this stage to demonstrate measures to maintain secrecy.

As for misappropriation, as detailed above, Olson was emailing with Dewees while he was still employed at SES and under a contractual obligation not to do so. ECF No. 1 at 7-10. SES alleges that those emails included its trade secrets. This meets 18 U.S.C. § 1839(5)(B)(ii)(II). As for Becht, taking the complaint as a whole, it is clear that Becht was encouraging Olson to continue disclosing information that these sophisticated parties would at least have reason to believe to be confidential.

SES also pleaded, and the court accepts as true, that the trade secrets are related to a product or service used or intended for use in interstate commerce. The complaint states that the trade secrets are used in connection with refineries and petrochemical facilities "of clients located throughout the United States." ECF No. 1 at 12. Nothing more is required.

> ii. *Breach of a Fiduciary Duty Claim Against Olson*

SES alleges that Olson breached his fiduciary duty to SES when he 1) accepted offers of employment from Becht while employed at SES; 2) provided Becht with non-trade secret "material advice, encouragement, and information," including confidential information, about HTHA technology; and 3) encouraged SES clients to transfer their business to Becht. ECF No. 1 at 18. Olson argues that the claim must be dismissed because Olson did not owe a fiduciary duty to SES. ECF No. 8 at 13.[2]

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant exists; (2) a breach by the defendant of his fiduciary duty; and (3) an injury to the plaintiff or a benefit to the defendant from the breach." *In re Mandel*, 578 F. App'x 376, 388 (5th Cir. 2014) (citing *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet denied).

SES alleges that, by virtue of Olson's role as a "key employee," he owed SES a fiduciary duty to act primarily to benefit SES in matters connected to his employment and to refrain from assisting SES's competitor, Becht. ECF No. 1 at 18. Olson argues that there are no fiduciary duties between employees and employers in Texas. ECF No. 8 at 13.

Texas law recognizes two types of fiduciary relationship: formal and informal. *Belliveau v. Barco, Inc.*, 987 F.3d 122, 132 (5th Cir. 2021). The formal fiduciary relationship arises as a matter of law in agency, partnership, and joint venture. *Id.* An informal fiduciary relationship arises where one person trusts or relies upon another based on a "special confidence." *Id.* at 133 (quotations and citation omitted). "An informal fiduciary relationship may arise between an employee and employer." *Navigant Consulting, Inc. v. Wilkinson*,

---

[2] Olson does not raise preemption with respect to the breach of fiduciary duty claim, so the court does not address it.

9

508 F.3d 277, 283 (5th Cir. 2007) (citation omitted). When an employee occupies a position of unusual authority or importance to an employer, they may owe fiduciary duties to their employer. *See id.* (approving a finding that two employees who had "broad discretion over all aspects" of their practice owed fiduciary duties).

When a fiduciary relationship exists between an employer and an employee, the employee has a duty to act primarily for the employer's benefit, not to compete against the employer, to deal fairly with the employer, and to fully disclose to the employer information about matters affecting the company's business. *Clarke-Smith v. Bus. Partners in Healthcare, LLC*, No. 3:14-CV-2732, 2016 WL 279094 at *11 (N.D. Tex. Jan. 22, 2016). Such an employee's duties would preclude him from taking confidential information, soliciting customers while still working for the employer, using employer funds for personal gain, and acting for his future interests by a course of conduct which would harm the employer. *Id.* at 284 (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002)).

SES alleged that Olson was a well-paid, "self-described key employee" at SES. ECF No. 1 at 17. It is therefore plausible that Olson had an informal fiduciary relationship with SES. Throughout the complaint, SES details Olson's negotiation of employment agreements, his diversion of customers to Becht, and his disclosure of SES's confidential information, all while still employed at SES. SES has adequately stated a claim for breach of fiduciary duty against Olson.

### iii. *Preemption of Common Law Claims Under TUTSA*

SES alleges that Becht tortiously interfered with the Agreement between it and Olson, and knowingly participated in Olson's breach of his fiduciary duty to Becht. SES further alleges that both Olson and Becht engaged in a civil conspiracy. Becht argues that these claims are preempted by the Texas Uniform Trade Secrets Act (TUTSA) and should be dismissed. ECF No. 9 at 10–11. Olson does not make any preemption arguments. The court will address the legal issue of

preemption under TUTSA first and apply the legal analysis to each cause of action next.

TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). Subsection (b)(2) of the statute states that it does not affect "other civil remedies that are not based upon misappropriation of a trade secret."

The meaning of this preemption provision is the subject of disagreement and debate. Courts struggle with two issues that are relevant here. Does preemption apply to a cause of action that seeks damages for misappropriation of confidential information that does not rise to the level of a trade secret? And can the issue be resolved at the motion to dismiss stage of the case? The undersigned answers both questions in the affirmative.

There is some consensus about the scope of preemption. "Texas state and federal courts sitting in diversity applying Texas law have held that civil remedies—such as common-law claims of unfair competition, conversion, or tortious interference—are preempted when they are 'based on the same underlying facts as [a plaintiff's] [Texas Uniform Trade Secrets Act] claim.'" *Forum Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*, 2022 WL 1103078, at *6 (S.D. Tex. Apr. 13, 2022) (quoting *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444, 2018 WL 315753, at *2 (W.D. Tex. Jan 5, 2018) (listing cases)); *see also Recif Res., LLC v. Juniper Cap. Advisors*, L.P., Civil Action No. H-19-2953, 2020 WL 6748049, at *13 (S.D. Tex. Nov. 17, 2020) (listing cases). District Courts in Texas, despite varying approaches to preemption, have consistently found that "allow[ing] multiple theories of relief for [the] same underlying harm" cannot proceed past a motion to dismiss. *Embarcadero Techs., Inc.*, 2018 WL 315753, at *3; *see also AMID, Inc. v. Medic Alert. Found. U.S., Inc.*, 241 F. Supp. 3d 788, 826 (S.D. Tex. 2017) (stating that the focus of the preemption analysis is "on whether the facts relied on to support the unfair-competition claim differ from those supporting the TUTSA claim").

The question is harder when, as here, the plaintiff seeks to maintain the non-TUTSA cause of action with respect to that portion

of the misappropriated information that the court later finds was not a trade secret after all. Some courts have permitted plaintiffs to do just that. In *AMID*, the plaintiff sought damages for trade secret misappropriation to the extent the information was protected as a trade secret and for unfair competition by misappropriation with respect to any information not protected as a trade secret. 241 F. Supp. 3d at 826-27. The court concluded that the non-TUTSA cause of action was not preempted because it was not based on the misappropriation of a trade secret. *Id.* at 827; *see also Downhole Tech. LLC v. Silver Creek Servs., Inc.*, No. H-17-20, 2017 WL 1536018, at *4 (S.D. Tex. April 27, 2017).

Other federal district courts have reached a different conclusion based on the holding of a Texas intermediate court of appeals. In *Embarcadero*, Judge Pittman considered *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App. 2017—Corpus Christi, no pet.), which found a breach of fiduciary duty claim to be preempted because it duplicated the alleged violation of TUTSA. The court in *Embarcadero* noted that the breach of fiduciary duty claim in *Super Starr* "was based upon diverting accounts and business and soliciting accounts and employees through the use of confidential and proprietary information," which the court of appeals found could not have been done without the use of the alleged trade secrets. *Embarcadero*, 2018 WL 315753, at *3. Judge Pittman concluded, based on the reasoning in *Super Starr*, that "TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information." *Id.* The court found the non-TUTSA cause of action to be preempted because it "stem[med] from the same underlying harm—the taking of Plaintiff's confidential information." *Id.* The court continued, "To allow multiple theories of relief for this same underlying harm would be to read the preemption provision too narrowly." *Id.*

Other courts have agreed with Judge Pittman's reading of *Super Starr* and have come to the same conclusion. *See Steves and Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-CV-545, 2018 WL 1796293, at *13-14, (E.D. Va. Apr. 16, 2018) (noting that *AMID* and *Downhole Technology* "lacked the guidance of Texas courts in how to interpret

[TUTSA's preemption provision]"); *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 684-85 (W.D. Tex. 2019) (applying preemption to a conversion claim that was "fundamentally concerned" with the unauthorized acquisition and destruction of company information, some but all of which is a trade secret); *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 333-34 (E.D. Tex. 2019). Further supporting these decisions is another Texas intermediate court of appeals opinion that concluded TUTSA's preemption provision applies not only to non-TUTSA causes of action alleging the misappropriation of trade secrets, but also to the defendant's fraudulent inducement to obtain the plaintiff's "data and analytics," to "gain insight into [plaintiff's] intellectual property," and to "use the data, analytics, and insight" for its own benefit. *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 533 (Tex. App.—San Antonio 2020, pet. denied). As was the case in *Super Starr*, the court in *Title Source* found TUTSA preemption applied to causes of action based on trade secrets as well as other information not a trade secret. Because "the foundation of these complaints is an assertion that [defendant] misappropriated [plaintiff's] trade secrets, these allegations duplicate [plaintiff's] TUTSA claim and are therefore preempted." *Id.* (citing *Super Starr*).

The undersigned agrees with these decisions, their reading of *Super Starr*, and its application to TUTSA's preemption provision—to a point. Certainly, TUTSA preemption would apply to non-TUTSA causes of action based on proprietary, confidential business information that derives economic value from being confidential—trade secret or not. That is what is before the court now, and thus that is as far as the court needs to go to decide this case. Whether TUTSA preemption applies beyond that is a question for another day. The court can envision other circumstances when information might fall under the heading of "confidential" information but may not be the type of information to which TUTSA preemption would apply.

### iv. Tortious Interference Claim Against Becht

SES alleges that Becht tortiously interfered with its contract with Olson when it knowingly induced Olson to breach the

confidentiality provision of his employment agreement. ECF No. 1 at 16–17. This claim is preempted by TUTSA.

SES's claim against Becht is based on Olson's contractual duty "not to disclose SES's confidential information while he was employed by SES." ECF No. 1 at 16. The complaint points to Olson's violation of Paragraph I of the agreement, which specifically concerns the handling of Becht's confidential information. *Id.* at 4, 15–16. SES alleges it has suffered "diminishment of the value of its intellectual property [] and enrichment of its direct competitor." *Id.* SES alleges Becht "acquired a benefit in the form of avoided development costs and increased profits." *Id.* at 20. The claim is focused on Becht's inducement of Olson to misappropriate confidential, proprietary information. While some of the information may not be a trade secret, preemption nevertheless applies. The facts are the same. Olson's alleged wrongdoing is the same. This is exactly the sort of claim that the above-discussed cases would find preempted. This claim should be dismissed.

### v. Knowing Participation in a Breach of Fiduciary Duty Claim Against Becht

SES alleges that Becht knowingly participated in Olson's breach of his fiduciary duties to Becht. ECF No. 1 at 19. Unlike the tortious interference with contract claim, this claim is based on two very different categories of wrongdoing. SES alleges that, while employed at SES, Olson accepted offers of employment from Becht and encouraged clients to transfer their business to Becht. SES also alleges that Olson provided Becht with material advice, encouragement and information and disclosed trade secrets to Becht, to the extent the alleged trade secrets are not trade secrets.

Claims based on Olson's acceptance of offers of employment and diverting customers have nothing to do with trade secrets. They exist entirely independent of the trade secret claims and are not preempted. *See 360 Mortg. Grp., LLC v. Homebridge Fin. Servs. Inc.*, 2016 WL 900577, at *7 (W.D. Tex. Mar. 2, 2016).

The claims based on Olson's disclosure of confidential information are preempted for the reasons stated above with respect

to the tortious interference with contract claim. The motion to dismiss should therefore be granted in part and denied in part.

As for the part of this claim not preempted, Becht argues that SES pleaded insufficient facts to show that it would have known of Olson's fiduciary duties to SES. A third party may become liable as a joint tortfeasor with a fiduciary under Texas law if it knowingly participates in the breach of a fiduciary duty. *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 215 (5th Cir. 2018). The elements of a claim of knowing participation in a breach of fiduciary duty are: "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship." *Id.* at 216 (quoting *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)).

SES and Becht are direct competitors. It seems clear from the complaint that Becht was endeavoring to hire a competitor's employee. Becht made several offers of employment to Olson and would thus have had some idea of his salary and worth. It would have known about his job duties and certainly knew about the level of information to which he had access. As discussed above, an employee like Olson may have a fiduciary relationship with his employer, and Becht had access to all the facts needed to understand the type of employee Olson was. The complaint also alleges that Olson, while still employed at SES, discussed with Becht moving SES's clients to Becht. ECF No. 1 at 9. The court concludes that there are enough facts at this stage to survive a motion to dismiss.

### vi.  *Civil Conspiracy Against Olson and Becht*

SES alleges that Olson and Becht engaged in a civil conspiracy to misappropriate trade secrets, to breach Olson's contract, and to breach Olson's fiduciary duties. ECF No. 1 at 20–21. Becht argues the conspiracy claim should be dismissed because SES did not plead facts showing a preconceived plan. ECF No. 9 at 17.

A civil conspiracy claim that is based on the misappropriation of trade secrets is preempted and should be dismissed. *See*

*MicroStrategy, Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1362–64 (Fed. Cir. 2005) (affirming dismissal of civil conspiracy under the identical language of Virginia's Uniform Trade Secrets Act). For the reasons discussed above, the same is true of SES's civil conspiracy claim based on Becht's inducement to breach Olson's contract and Becht's participation in Olson's breach of fiduciary duty. The only part of the civil conspiracy claim that can survive preemption is that which is based on Olson's acceptance of employment while still employed at SES and his diversion of customers to Becht. The remainder of this claim is preempted for the reasons discussed above.

With respect to what remains of this claim, Becht argues that there are no allegations of a meeting of the minds on a preconceived plan to interfere with Olson's fiduciary duty breach. The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). "[A] civil conspiracy may be proven by circumstantial evidence." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012); *see also, Nguyen v. Hoang*, 318 F. Supp. 3d 983, 1021 (S.D. Tex. 2018) ("The Texas Supreme Court has 'recognize[d] that proof of a conspiracy may be, and usually must be made by circumstantial evidence.'") (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968)). Civil conspiracy is a derivative tort that "depends on some underlying tort or other illegal act. *Agar Corp.*, 580 S.W.3d at at 140–41.

SES alleged a comprehensive factual scenario in which Olson and Becht engaged in a series of acts over more than 18 months. ECF No. 1 at 7–10. This lengthy and well-documented course of conduct plausibly raises the inference of a meeting of the minds. The complaint alleges facts to show that Olson's plan was to remain at SES long enough to get his HTHA model up and running and then to leave for Becht. ECF No. 1 at 7–9. There are also facts from which one can conclude that Becht knew of Olson's plan. *Id.* at 8–9. There are

sufficient facts from which the court can conclude that Olson and Becht plausibly had a meeting of the minds on a plan and then executed it.

3. *Conclusion*

For the reasons explained above, the court recommends that the motions to abstain be denied, that Olson's motion to dismiss, ECF No. 8, be denied, and that Becht's motion to dismiss, ECF No. 9, be granted in part and denied in part.

To the extent leave to amend is sought, it is denied. The reasons for the court's partial dismissal of this case are based on the law, not on the insufficiency of the complaint.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on August 4, 2022.

_____
Peter Bray
United States Magistrate Judge