United States District Court
Southern District of Texas
**ENTERED**
August 25, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

Stress Engineering Services, Inc., §
   *Plaintiff,* §
 §
v. §     Civil Action H-21-3210
 §
Brian Olson and §
Becht Engineering Co., Inc., §
   *Defendants.* §

## MEMORANDUM AND RECOMMENDATION

On December 8, 2022, Stress Engineering Services, Inc., (SES) filed a motion for partial summary judgment against Brian Olson. ECF No. 82. On April 7, 2023, Olson filed objections to SES's summary judgment evidence. ECF No. 95. On May 12, 2023, Olson filed a motion for summary judgment. ECF No. 104. The motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). The undersigned recommends that SES's motion be **DENIED**, that Olson's motion be **DENIED IN PART**, and that the objections be **DENIED**.[1]

### 1. Background

This case concerns "high temperature hydrogen attack," or HTHA. HTHA can cause equipment used in refineries and chemical plants to suffer catastrophic failures. SES, an engineering firm, and Becht Engineering Company, Inc. (Becht)

---

[1] In this memorandum and recommendation, the court addresses only the cross-motions for summary judgment filed by SES and Olson. Also pending are Becht Engineering Co., Inc.'s (Becht) motion for summary judgment, ECF No. 109 and several motions to exclude expert testimony, ECF Nos. 102, 106, 107. These other pending motions will be addressed separately in due course.

are direct competitors. Both provide engineering services to detect and predict HTHA in their clients' equipment. ECF No. 82 at 5.

From June 2012 to October 24, 2020, Olson worked as a staff consultant for SES, an engineering firm. Olson's Aff. ¶ 2, ECF No. 104-1. The employment relationship between Olson and SES was explicitly at-will. *See* ECF No. 82-1 at 7. On June 4, 2012, Olson signed an agreement (Agreement) that included a provision on the return of materials by which Olson promised to:

> promptly return to [SES] when requested by [SES], and in any event upon termination of [his] employment by [SES], any and all drawings, written information, or software source codes, etc. which is the property of or controlled by or in the custody of [SES] or its clients, whether or not such information is of a confidential nature.

ECF No. 82-1 at 7. The Agreement also included a confidentiality clause prohibiting the disclosure of "any information pertaining to the consulting services rendered for [SES]'s clients" including work originated while employed by SES that reasonably could be expected to be of a confidential nature. *See id.* at 6.

According to Olson's supervisor, Patrick Boster, Olson worked in HTHA evaluation and analysis services for SES's clients. Boster's Aff. ¶ 5, ECF No. 82-1 at 147. Boster was the Practice Lead of SES's Plant Services Division. *Id.* ¶ 2. SES and other engineering firms offer Joint Industry Programs (JIP) designed to facilitate the sharing of information among petrochemical companies about how to best deal with HTHA. *See* ECF No. 104-3. In connection with a JIP, SES posted an image of a crack caused by HTHA to "showcase the importance of characterizing early stage HTHA damage with scanning electron microscopy" (crack image). ECF No. 104-3.

In 2018, after the SES environment had become what Olson described as "toxic[,]" he began looking for another job. Olson reached out to Becht Engineering Co., Inc., (Becht), one of SES's competitors. Olson's Aff. ¶ 3. Becht made Olson an offer of employment which Olson accepted in November 2019. *See* ECF No. 82-1 at 15. Olson's acceptance of the employment offer stated that Olson intended to start in January 2020, but, for various reasons, Olson delayed leaving SES until October 2020. *See id.* at 15; Olson's Aff. ¶¶ 5, 7.

Prior to Olson's resignation on October 24, 2020, Olson began boxing his "personal effects, papers, and books" at his office. Olson's Aff. ¶¶ 8–9. After cleaning out his office, he emailed his managers to submit his resignation and to offer to participate in an exit interview. *Id.* ¶ 10; ECF No. 104-1 at 8. Part of the reason for attempting to arrange the exit interview was to return SES's property to SES. *Id.* Olson averred that his "multiple attempts to schedule an exit interview" were ignored. Olson's Aff. ¶ 11. He contacted a human resources (HR) representative who told him that she would arrange an exit interview but never did. *Id.*

According to SES's counsel, SES sued Olson in Texas state court on October 27, 2020, three days after Olson's resignation. Kasi Chadwick's Aff. ¶ 8, ECF No. 93-3; *see also* Olson's Aff. ¶ 12. Olson hired legal counsel who facilitated the return of the SES materials remaining in Olson's possession. Olson's Aff. ¶ 12. Olson began working for Becht on November 30, 2020. David Dewees's Decl. ¶ 2, ECF No. 93-2.

Shortly before filing this federal lawsuit on October 2, 2021, SES dismissed the state court case without prejudice. ECF No. 8 at 1; *see also Stress Eng'g Servs. Inc. v. Brian Olson*, No. 2020-68936, (127th Dist. Ct., Harris Cnty., Tex. Oct. 27, 2020). The Complaint filed in this action alleges causes of action similar

3

to those alleged in the state case based on the same facts and events. *See* ECF No. 1. SES alleges violations of the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831–1839, against both defendants. *Id.* at 12–15. Against Olson, SES also alleges Texas claims for breach of contract, breach of fiduciary duty, and civil conspiracy. *Id.* at 15–21. Against Becht, SES also alleges Texas claims for tortious interference with a contract, knowing participation in breach of fiduciary duty, and civil conspiracy. *Id.* at 16–17, 19–21.

Olson and Becht separately moved to dismiss or, alternatively, abstain from hearing the case. *See* ECF Nos. 8, 9. On August 4, 2022, the court entered a report and recommendation that was adopted by the district judge over SES's and Becht's objections. *See* ECF Nos. 55, 57–60. The court dismissed SES's tortious interference with contract claim and any portion of the civil conspiracy claims that is based on the misappropriation of trade secrets. *See* ECF No. 55 at 14. The court also found that the Texas Uniform Trade Secrets Act (TUTSA) preemption provision "would apply to non-TUTSA causes of action based on proprietary, confidential business information that derives economic value from being confidential—trade secret or not." *Id.* at 13.

### 2. Motion for Summary Standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Cross-motions "must be considered separately, as each movant bears the burden of establishing that no genuine issue of

material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004). If no genuine issue of material fact exists and one party is entitled to summary judgment as a matter of law, the court may grant that party's motion for summary judgment. *Id.* at 539.

### 3. Olson's Objections to the Evidence

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). Declarations are competent summary judgment evidence if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

First, Olson objects to the declaration of John B. Thomas, one of SES's attorneys, offered as evidence of damages resulting from breach of contract. *See* ECF No. 95 at 1. The gist of the declaration is that SES incurred legal fees in excess of $100,000 and computer forensic expert fees in excess of $15,000, which, at least in part, were costs attributable to SES's efforts to secure the return of documents and electronic files in Olson's possession after his resignation. ECF No. 82-1 at 156. Olson does not argue that the declaration does not meet the Rule 56 competency standards. Rather, Olson argues that the declaration: (1) "contains conclusory and self-serving statements" that are not competent summary judgment evidence; (2) "is not supported by facts, invoices, or any other tangible evidence;" and (3) "is speculative[.]" *Id.* He also

6

argues that it does not describe damages but, rather, attorneys' fees and costs. *Id.* SES argues in response that it seeks to prove *only* the existence, not the amount, of "out-of-pocket expenses that it incurred in responding" to "Olson's breach of his promise to return all of SES's information and other property at the end of his employment[.]" ECF No. 82 at 11; ECF No. 100 at 1. The declaration is competent summary judgment evidence showing that SES incurred some out-of-pocket expenses related to the alleged breach of contract claim. Accordingly, the court denies Olson's objections.

Second, Olson objects to the expert opinion of Joseph Lemberg in support of SES's claim that Olson provided "material assistance" to Becht in breach of Olson's fiduciary duty.[2] ECF No. 95 at 2–3. Olson argues that Lemberg's opinions on the topic are conclusory. *Id.* at 2. The court does not take those opinions into consideration. As discussed below, the court finds that, without consideration of Lemberg's opinions, genuine disputes of material fact preclude summary judgment in favor of either party on SES's claim for breach of fiduciary duty. Accordingly, the court denies as moot Olson's objections to Lemberg's report.

### 4. Analysis

SES and Olson both move for summary judgment on breach of contract and breach of fiduciary duty. Olson also moves for summary judgment on trade secret misappropriation under the DTSA and civil conspiracy. The parties' filing of cross-motions on the same issues would suggest agreement that no genuine dispute

---

[2] In the heading of the section discussing Lemberg's expert report, Olson also mentions Kristofer Buchan's report. *See* ECF No. 95 at 2 ("Expert Reports (Reports of Joseph Lemberg and Kristofer Buchan – Exhibits (Q & R)"). In Olson's discussion, he does not mention Buchan's report at all, much less make any objection thereto.

of material fact exists and that the court can decide the issues as a matter of law. That is not the case here. The court concludes that the evidence and reasonable inferences that a jury could draw from the evidence necessitate a trial on all four claims.

### A. Breach of Contract

"In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). "A breach occurs when a party fails to perform a duty required by the contract." *Id.* (quoting *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied)).

SES seeks summary judgment on its contract claim only as to the allegation that Olson breached the Agreement to "promptly return" SES materials "when requested by [SES], and in any event upon termination of [his] employment by [SES]" by "gathering and carrying away—in the dead of night, no less—several boxes of SES's physical property and a significant volume of SES's information in electronic form." ECF No. 82-1 at 7; *see also* ECF No. 82 at 9. Olson, on the other hand, seeks summary judgment in his favor on the above stated return of property clause, arguing that "SES delayed and frustrated the process" and has no evidence of damages. ECF No. 104 at 19–21.

About Olson's return of property, the court finds genuine disputes of material fact preclude summary judgment for either party. It is undisputed that Olson boxed the materials in his office in the days preceding the submission of his resignation on October

8

24, 2020. *See* Olson's Aff. ¶ 8. Olson did not take his computer or key fob with him when he left SES's offices but did take the boxes. *See id.* ¶ 10; ECF No. 104-1 at 8. According to Olson, he intended to sort through the materials and separate his personal items from those belonging to SES. Olson's Aff. ¶ 10. Olson does not dispute that he was required to return the SES materials and affirms that it was his intention to do so. *See id.*

On the same night, Olson submitted his resignation. Olson's Aff. ¶ 10; ECF No. 104-1 at 8. In his resignation letter, Olson offered to participate in an exit interview. ECF No. 104-1 at 8. According to Olson, he was aware that an exit interview was SES's preferred method to settle final matters and return anything belonging to SES. Olson's Aff. ¶ 10. He again attempted to schedule an exit interview to no avail. *See id.* ¶ 11; ECF No. 104-1. At one point, an HR representative agreed to schedule an exit interview, but it never occurred. *See* Olson's Aff. ¶ 11.

When SES filed suit in state court, the judge in that case issued a temporary restraining order enjoining Olson from using or destroying SES's information. Chadwick's Aff. ¶ 8. Olson's counsel in state court arranged for the return of the SES materials through the litigation process. *See id.*; ECF No. 104-1 at 10–13, 15. Olson's counsel delivered the boxes Olson had removed from his office to SES's counsel on November 6, 2020. *See* ECF No. 104-1 at 15–16. At that time, Olson's counsel also identified the electronic devices in Olson's possession and offered to coordinate the return of any SES materials on those devices. *See id.* At the end of November 2020, SES's counsel received the last of SES's documents that Olson had taken with him. *See id.* at 11. At about the same time, Olson's counsel provided SES's counsel with a report on Olson's electronic devices. *See id.* at 10. Olson's counsel provided the electronic devices to SES on January 21, 2021. ECF

82-1 49–50. As of that date, everything in Olson's possession that contained SES materials had been returned. *See* Olson's Aff. ¶ 15.

Because the parties agree that Olson was obligated to return the SES materials and that they were eventually returned, the only issue is whether Olson returned them "promptly" or "in any event" upon termination of his employment. Olson argues that SES alone caused the delay in his return of the materials by its actions, including, at least in part, by not participating in an exit interview. ECF No. 93 at 8. SES argues that Olson could have complied with the Agreement by simply leaving the materials at SES's offices as he did his work computer and key fob. ECF No. 82 at 11.

The Agreement does not define the term "promptly," and neither party offers an interpretation of "promptly" as used in the Agreement. Merriam-Webster defines "promptly" to mean "in a prompt manner[,]" "without delay[,]" "very quickly or immediately[.]" Merriam-Webster Dictionary, https: // www. merriam-webster.com/. "Of course, how much delay the term "promptly" can accommodate can vary in different circumstances." *See, e.g., Citibank, N.A. v. Brigade Capital Mgmt., LP*, 49 F.4th 42, 69–70 (2d Cir. 2022). As discussed, there are many facts surrounding Olson's return of materials to SES. There is disagreement about whether Olson was prevented from returning the materials and whether he could have acted faster. Evaluation of the facts in this regard is for the jury.

In terms of whether Olson breached his agreement to return SES's property "in any event upon termination" of his employment, fact issues prevent entry of summary judgment. It is not clear from the facts presented that simply leaving sensitive materials unattended on Olson's desk would have been an appropriate option. Moreover, there is some evidence that SES either

prevented or delayed Olson in performing his duties under the contract. It also appears that SES's alleged failure to facilitate return of the material may have been a failure on SES's part to perform under the contract. Factual development at trial is the only way to answer these questions. Both parties' motions for summary judgment on this issue should be denied.

Olson also argues that SES's breach of contract claim based on his failure to return property fails because SES has not presented evidence of damages. *See* ECF No. 104 at 21. SES argues that it seeks incidental damages in the form of out-of-pocket expenses. *See* ECF No. 82 at 11–12. As discussed above, Thomas offered competent summary judgment evidence that SES incurred at least the costs of forensic analysis after the return of SES's materials. This provides some evidence of damages to satisfy SES's summary judgment burden. Summary judgment on this basis should be denied.

Olson also moves for summary judgment on SES's claim that Olson breached the Agreement's confidentiality clause. He argues that SES has no evidence of breach or damages. *See* ECF No. 104 at 21. The court notes that Olson's motion on this point consumes just a few sentences and is not well developed. The court also notes that SES does not respond to Olson's arguments, much less point to evidence in support of a breach. As will be discussed below, however, the court recommends that Olson's summary judgment motion on the trade secrets be denied. Accordingly, there are at least fact questions about whether Olson disclosed SES's confidential or trade secret information and whether that disclosure caused SES damages. From those conclusions, it follows that there are fact questions about whether Olson breached the confidentiality clause. Accordingly, the court recommends that summary judgment on this issue be denied.

## B. Breach of Fiduciary Duty

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant exists; (2) a breach by the defendant of his fiduciary duty; and (3) an injury to the plaintiff or a benefit to the defendant from the breach." *In re Mandel*, 578 F. App'x 376, 388 (5th Cir. 2014) (citing *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet denied). Generally, "employees are not fiduciaries of their employers simply by virtue of the employment relationship[,]" but "employees do owe certain limited fiduciary duties to not compete with their employers." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002)). At-will employees are free to plan to compete with their employers, even to the point of taking active steps while still employed. *Id.* at 201. However, among other actions, they may not appropriate their employers' trade secrets, solicit their employers' customers while still working for their employers, and "may not carry away certain information[.]" *Salas v. Total Air Servs., LLC*, 550 S.W.3d 683, 691 (Tex. App.—El Paso 2018, no pet.) (quoting *Johnson*, 73 S.W.3d at 202). More generally, "[a]n employee has a duty to act primarily for the benefit of his employer in matters connected with his employment." *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762–63 (Tex. App.–Houston [1st Dist.], pet. denied) (citing *Daniel v. Falcon Int. Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.–Houston [1st Dist.] 2005, no pet.)).

Before addressing the merits of the parties' cross-motions for summary judgment on this claim, the court revisits its August 4, 2022 Report and Recommendation that was adopted by the district judge. *See* ECF No. 55. Therein, the court addressed TUTSA preemption: "TUTSA 'displaces conflicting tort, restitutionary, and

other law of this state providing civil remedies for misappropriation of a trade secret.' Tex. Civ. Prac. & Rem. Code § 134A.007(a). Subsection (b)(2) of the statute states that it does not affect 'other civil remedies that are not based upon misappropriation of a trade secret.'" ECF No. 55 at 11. Based on caselaw interpreting the TUTSA preemption, the court stated: "Certainly, TUTSA preemption would apply to non-TUTSA causes of action based on proprietary, confidential business information that derives economic value from being confidential—trade secret or not." *Id.* at 13. The court thus recommended that those claims be dismissed as preempted by TUTSA. *See* ECF No. 55 at 13.

The court also considered whether TUTSA preempted SES's claim against Becht for knowing participation in a breach of fiduciary duty. The court parsed the claim into those allegations that were preempted because they were based on the disclosure of confidential information and those that were not because they were based on Olson's acceptance of offers of employment from Becht and on Olson's encouragement of clients to transfer their business to Becht. *See* ECF No. 55 at 14–15. The court ruled that only the claims based on the disclosure of confidential information are preempted by TUTSA.

Olson, who did not offer any arguments on preemption at the time, now argues that the breach of fiduciary duty claim against Olson is premised solely on an allegation that Olson disclosed SES's trade secrets to Becht and therefore is preempted by TUTSA. *See* ECF No. 104 at 13. To the extent that SES is pursuing a breach of fiduciary duty claim against Olson based on confidential information, that claim is preempted by TUTSA for the reasons explained in the court's prior opinion.

SES argues that Olson breached his fiduciary duty to SES, not by disclosing trade secrets or other confidential information to

which TUTSA preemption would apply but by providing Becht "material advice, encouragement, and information about numerous aspects of HTHA technology and . . . encouraging SES's clients to transfer their business to Becht." ECF No. 82 at 12. In other words, SES contends that, instead of acting primarily for SES's benefit, Olson went further than simply planning to compete with SES—Olson actively competed with SES.

The undisputed evidence shows that, without disclosing his intentions to SES, Olson negotiated with Becht and signed an offer letter almost a year before he resigned from SES. *See* Olson's Aff. ¶¶ 3, 5; Boster's Aff. ¶ 10; ECF No. 82-1 at 15. Those actions alone, however, do not constitute a breach of fiduciary duty. *Cf. Johnson*, 73 S.W.3d at 201 (stating that an at-will employee, while employed, may take active steps toward finding employment with his current employer's competitor and may do so without disclosing his plans to his employer); *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 763 (Tex. App.–Houston [1st Dist.], pet. denied) (quoting *Johnson*, 73 S.W.3d at 201) (same). To the extent that SES argues that Olson could not accept employment with Becht while still an employee of SES, that is not the law.

The evidence also shows that, unbeknownst to SES, Olson stayed in communication with Becht employees for months while still at SES. *See* Olson's Aff. ¶ 6; Boster's Decl. ¶ 10. Among other topics, Olson discussed his status at SES and technical aspects of HTHA methods. For example, as early as April 2019, Becht was internally discussing Olson's interest in joining Becht as soon as the American Petroleum Institute had accepted "The Olson Method" for HTHA modeling and was considering how to make sure Olson and Becht were "covered so that his method is in the public domain[.]" ECF No. 82-1 at 12. Olson also texted Becht employee Bobby Wright in February 2020: "I am using ses [sic] at

14

this moment as they are using me." ECF No. 82-1 at 34. He also expressed concern that his delay in leaving SES could be affecting his relationship with Becht and Becht's business outcomes. Just before Olson resigned from SES, Olson texted someone at Becht that he had told an SES customer he should not continue with SES's JIP and that Becht "could likely do a [JIP] very well[.]" ECF No. 82-1 at 43.

Olson also communicated with David Dewees, Becht's HTHA division manager, a fact they both admit. *See id.* ¶¶ 18–19; Dewee's Decl. ¶ 4. In an April 7, 2020 text exchange, Olson asked when "your [Becht's] htha method" would be published in Inspectioneering. ECF No. 82-1 at 36. Dewees responded that he had thought about texting Olson about the publication "but thought better of sending [him] anything – thinking complete deniability is better?" *Id.* When asked whether "[l]egal stuff [was] ratcheting up again[,]" Olson said, "No, but after thinking deeply about the situation, I would for sure get sued if I continue htha related consulting and perhaps even code work. I know you guys will support me, but situation would be difficult. Publishing your own method and essentially popularizing the classic void growth work on this subject is needed." *Id.* A few weeks later, Olson texted Dewees, "Minimizing legal risk and ensuring [I] still do htha work is my priority." ECF No. 82-1 at 38. In October 2020, Olson texted Dewees about technical aspects of HTHA: "Not sure if you have a void spacing function that considers applied stress, methane pressure, and temperature, but[,] if you do, perhaps this is why there was a larger discrepancy for compressive stress states." ECF No. 82-1 at 41.

The above communications are not clear breaches of Olson's fiduciary duties to SES. They certainly seem suspicious, but there is more than one way to interpret Olson's interactions with Becht.

That interpretation is for the jury to do. The facts presented do not establish SES's entitlement to summary judgment on breach of fiduciary duty. Thus, the court cannot find as a matter of law that Olson is liable and cannot recommend summary judgment in SES's favor.

According to Olson, SES cannot prove damages. As damages for breach of fiduciary duty, SES now seeks only forfeiture of Olson's salary during the period that he was providing substantial assistance to Becht. Olson argues that forfeiture of wages is not available under Texas law and that it violates the Fair Labor Standards Act. *See* ECF No. 93 at 11–13.

Under Texas law, a court, upon finding a breach of fiduciary duty, "may fashion an appropriate equitable remedy, including forfeiture of fees and disgorgement of any profit made at the expense of the employer." *Orbison v. Ma-Tex Rope Co.*, 553 S.W.3d 17, 30 (Tex. App.–Texarkana 2018, pet. denied) (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010); *Burrow v. Arce*, 997 S.W.2d 229, 245–46 (Tex. 1999)). The *Orbison* court found "no essential distinction between forfeiting a fee paid to an attorney or trustee who breaches his fiduciary duty and forfeiting the salary paid to an employee who does the same." *Id.* at 31. Thus, SES has produced some evidence of damages. Olson's motion for summary judgment on this issue should be denied.

16

### C. Misappropriation under the DTSA[3]

To state a claim under DTSA, a plaintiff must show: (1) a trade secret; (2) misappropriation; and (3) that "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836 (b)(1).

DTSA defines the term "trade secret" to mean:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). The existence of a trade secret is a question of fact. *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (analyzing trade secret claims under DTSA and TUTSA). DTSA's definition of "misappropriation" includes acquisition of trade secrets with the knowledge that they were

---

[3] SES filed a combined response to Olson's and Becht's motions for summary judgment. Here, the court addresses only Olson's arguments for summary judgment on misappropriation. The court will address Becht's arguments later in connection with consideration of its pending motion for summary judgment.

acquired by improper means and disclosure or use of trade secrets without consent. *See* 18 U.S.C. § 1839(5). The definition of "improper means" includes theft and "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A).

Olson argues that "not all of what SES contends are its trade secrets are trade secrets under the DTSA[,]" and that SES has no evidence that Olson used or disclosed any of the alleged trade secrets. ECF No. 104 at 16–18. As to the former, Olson argues that the Four-Point Bend Methods, the Waller Test Results, and Scientific Know-How are not trade secrets. *Id.*

SES generally described the first three of these alleged trade secrets in its Complaint. ECF No. 1 at 6. While not specifically labelling the HiTHAr Software as a trade secret, SES mentioned its "trade secret formula and equation." ECF No. 1 at 11. In its supplemental identification of its trade secrets, SES did not refer to the trade secrets by the above names but, rather, provided further description of them in six parts. *See* ECF No. 50. SES later filed an amended supplemental identification of its trade secrets[4] in which SES withdrew the trade secret identified as a "[t]esting method and apparatus for measuring corrosion damage in a sample while under a bending load at a desired temperature and pressure[,]" which the parties agree is what SES's Complaint referred to as the Four-Point Bend Methods. *See* ECF No. 88 at 2 (withdrawing that trade secret because discovery uncovered no evidence that it had been misappropriated); ECF No. 104 at 16 (acknowledging that the trade secret in section I of SES's supplemental identification of trade secrets was the Four-Point

---

[4] By separate order, the court has denied Defendants' Motion to Strike Plaintiff's Amended Supplemental Identification of its Trade Secrets, ECF No. 101. *See* ECF No. 125.

Bend Methods); ECF No. 116 at 8 (pointing out that SES had withdrawn the Four-Point Bend Methods).

The Waller Test Results are discussed in section II of the amended supplemental identification of SES's trade secrets, which discusses "[t]est results supporting the SES modeling of HTHA[,]" and section III, which discusses "[v]alidation of SES's HTHA model from the testing results[.]" ECF No. 88 at 2–6. Olson devotes five sentences to the argument that the Waller Test Results: (1) are not trade secrets because SES did not take reasonable measures to keep the information secret; and (2) SES has no evidence of disclosure. ECF No. 104 at 17.

Olson first argues that SES's posting of the crack image on social media and discussion of components of the Waller Test Results in public presentations exemplify SES's failure to keep them secret. ECF No. 104 at 17 (citing ECF No. 104-3 (showing the crack image post and comments)); ECF No. 105 at 8 (testifying that aspects of the Waller Test Data were mentioned in industry presentations). Olson fails, however, to explain what aspects of the Waller Test Data were revealed in the crack image post or the industry presentations. *See* ECF No. 104 at 17.

In response, SES argues that the image was posted alone without any data and that, on the two or fewer occasions when the Waller Test Data was mentioned in industry presentations, the information consisted of only "[g]eneral test apparatus configuration." ECF No. 116 at 9 (citing ECF No. 116-1 at 51, 53 (clarifying what was shared in the presentations)). SES thus argues that neither the image nor the presentations disclosed data that forms the basis of SES's misappropriation claim, which focuses on insights Olson shared directly with Becht. ECF No. 116 at 9; ECF No. 116-1 at 53; *see also* ECF No. 104-3. Because Olson has not shown that the crack image or the information in the

presentations revealed any trade secret material, Olson fails to demonstrate that the information publicly exposed the Waller Test Data. The court therefore cannot decide as a matter of law that SES failed to protect the secrecy of this trade secret.

Olson also argues that corporate representative Steven Kinyon denied disclosure or use of the Waller Test Results in his deposition testimony. *See* ECF No. 104 at 17 (citing ECF No. 105 at 30–31). Olson's counsel asked Kinyon, "What about the use or the disclosure to third parties, . . . what evidence do you have or information do you have that shows that *this particular Exhibit 12* was disseminated outside of [SES]?" ECF No. 105 at 30–31 (emphasis added). Kinyon answered, "I don't have knowledge of anything specific *for this email*." *Id.* at 31 (emphasis added). Exhibit 12 is an email containing meeting notes of a weekly HTHA meeting that was sent to attendees of that meeting. *See* ECF No. 105 at 29. Kinyon's testimony thus is not an admission that SES has *no* evidence of disclosure.

SES argues that its theory of misappropriation is based on insights Olson gained from the Waller Test Data and shared with Becht in July and August 2019. *See* ECF No. 116 at 11–12 (citing ECF No. 116-1 at 28–29 (describing text messages[5] between Olson and Dewees)). SES also argues that Olson misappropriated the Waller Test Data by acquiring them with knowledge that they were acquired by improper means. *See* 18 U.S.C. § 1839(5) (defining misappropriation). As discussed above, there is evidence that Olson retained SES materials that included trade secret

---

[5] The text messages to which SES cites are quoted in Lemberg's expert report. As discussed above, the court has not taken Lemberg's opinions into consideration. The court here considers only the text messages, which are capable of being presented separately from Lemberg's expert report "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC*, 835 F.3d at 534 (quoting Fed. R. Civ. P. 56(c)(2)).

information after resigning. Thus, SES has produced some evidence of Olson's disclosure of the Waller Test Data.

About Scientific Know-How, discussed in sections IV and VI of the amended supplemental identification of SES's trade secrets, Olson argues only that the alleged trade secret discussed in section IV, the "Articles Compendium," is not a protectable trade secret because SES did not know about it and therefore could not have taken any steps to protect its secrecy. *See* ECF No. 104 at 17–18.

The Articles Compendium, compiled by Olson over the years, was a "library of these high-temperature metallurgical phenomenon" containing more than 4200 articles and technical papers on which Olson spent considerable time compiling and evaluating the information. ECF No. 116-1 at 36–37, 43; *see also* ECF No. 104 at 17. Kimberly Flesner, SES's Practice Lead of the Materials Engineering Division, called the collection "really extensive and very impressive." ECF No. 116-1 at 37. Although Flesner admitted that she did not know about the Articles Compendium before Olson resigned, Olson had used the articles in the development of the mathematical modeling and often referenced the articles found in the compendium in his SES presentations and articles. ECF No. 116-1 at 38, 42–44.

Under the DTSA, compilations are explicitly protected as long as reasonable measures are taken to keep the information secret and the information derives independent economic value from its secrecy. 18 U.S.C. § 1839(3). "[E]ven if [a compilation of information] is readily available, it may be protected as a trade secret given the difficulty and expense of compiling the information." *360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, CAUSE NO.: A-14-CA-00847-SS, 2016 WL 900577, at *4 (W.D. Tex. Mar. 2, 2016) (citing *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) (holding that the

district court did not err in finding that a customer list with purchase information was protectable even if the names and addresses were readily ascertainable through trade journals because compiling the purchase information only could be done at considerable expense)) (analyzing a trade secret claim under TUTSA prior to DTSA's enactment date of May 11, 2016). Readily available information may also be protected when obtained while working for a former employer. *See id.* (quoting *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 626 (S.D. Tex. 2011)).

Olson does not dispute that he developed the Articles Compendium while working at SES. *See* ECF No. 104 at 17; ECF No. 116-1 at 40. The Articles Compendium was stored in hard copy in his office and electronically on his SES hard drive. ECF No. 116-1 at 36, 41. The value of both Olson's efforts in developing the Articles Compendium and the use of its content in his work suggest an independent economic value. *See 360 Mortgage Grp., LLC*, 2016 WL 900577, at *4.

Flesner admitted that she did not institute specific procedures to keep the Articles Compendium secret. *See* ECF No. 116-1 at 38. However, SES did require that Olson, at the time of his employment, sign the Agreement discussed above. By signing, Olson agreed to the confidentiality clause stating that he would not disclose outside of SES "any information pertaining to the consulting services rendered for [SES]'s clients" including that which he originated while employed by SES that he could reasonably expect to be of a confidential nature. ECF No. 82-1 at 6. The court thus cannot decide as a matter of law that SES did not take steps to protect the secrecy of the Articles Compendium.

Flesner's testimony also raises a fact issue as to whether Olson misappropriated the Articles Compendium. Flesner testified that the Articles Compendium was among the SES information

22

that Olson removed from his office. *See* ECF No. 116-1 at 46. Because Olson retained this information after he left SES to work for Becht, the court cannot decide as a matter of law whether Olson acquired the Articles Compendium by improper means or whether he disclosed them. Thus, the court cannot decide this issue as a matter of law.

About the HiTHAr software, discussed in section V of the amended supplemental identification of SES's trade secrets, Olson argues that "Lemberg testified that there was no evidence the HiTHAr software was misappropriated." ECF No. 104 at 18 (citing ECF No. 105 at 36–37). Lemberg testified only that he had "no evidence that code that was found in the Hi[THA]r model made its way into the Becht spreadsheets." ECF No. 105 at 37. The evidence shows that HiTHAr software components were on Olson's personal electronic devices after his resignation. *See* ECF No. 116-1 . Because Olson retained this information after he left SES to work for Becht, the court cannot decide as a matter of law whether Olson acquired the HiTHAr trade secrets by improper means or whether he disclosed them.

Because fact issues abound on trade secret status and misappropriation, summary judgment should not be granted.

### D. Civil Conspiracy

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp. v. Electro Circs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Civil conspiracy is a derivative tort that "depends on some underlying tort or other illegal act. *Id.* at 140–41. The court previously limited this claim to conspiracy to breach Olson's fiduciary duty.

Olson argues that "[w]here the underlying tort claim fails, so too does the conspiracy claim." ECF No. 104 at 25 (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010)). SES agrees that "if all tort claims are dismissed, the conspiracy claim is properly dismissed as well" and adds "conversely, if any part of any tort claim survives, the conspiracy claim survives as well." ECF No. 116 at 27. They are both correct. As discussed above, SES's claim for breach of fiduciary duty survives summary judgment and, thus, so too does civil conspiracy.

### 4. Conclusion

For the above reasons, the court recommends that SES's motion for summary judgment be **DENIED** and Olson's motion for summary judgment be **DENIED IN PART**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August 25, 2023.

Peter Bray
United States Magistrate Judge